UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DIRECTV, INC., a California corporation, | ) ) |
| Plaintiff, | ) NO. CV-05-94-LRS ) |
| v. | ) ORDER DENYING DEFENDANT'S ) MOTION FOR SUMMARY JUDGMENT |
| LUKE GARZA, | ) ) |
| Defendant. | ) ) |

BEFORE THE COURT is Defendant Luke Garza's Motion for Summary Judgment (Ct. Rec. 7). Defendant Garza moves for summary dismissal of Plaintiff Directv's legal claims based on the applicable statutes of limitations and Plaintiff's equitable claims based on the doctrine of laches. For the reasons that follow, Defendant's motion is DENIED.

## I.  FACTUAL BACKGROUND

The parties at this time do not dispute the material facts of this matter. Statement of Facts in Opposition at 1.

Directv, Inc. is the nation's leading direct broadcast satellite system, delivering digital entertainment and informational programming to approximately 11 million homes and businesses equipped with Directv receiving equipment. To provide security for and prevent unauthorized viewing of its television programming, Directv encrypts, or electronically scrambles, its satellite

ORDER - 1

transmissions.

On or about December 1, 2001, Directv, with the assistance of the United States Marshals, executed Writs of Seizure upon The Computer Shanty, an internet seller of devices ("Pirate Access Devices") primarily designed for the unauthorized interception of Directv's Satellite Programming.  In the "raid," Directv obtained various business records, including orders, invoices, electronic communications, shipping documentation, purchase receipts, credit card receipts and customer lists.

Relying on those records, Directv filed suit against Lucas Garza, Jr., Defendant Garza's father, in the United States District Court for the Eastern District of Washington on November 23, 2003, alleging that Lucas Garza, Jr. had purchased, used, and distributed Pirate Access Devices in violation of federal and state law.

During settlement attempts, the former attorney for Lucas Garza, Jr. informed Directv on or about April 13, 2003 that "Lucas Garza, Jr. was the father of Luke Garza" and claimed that Lucas Garza, Jr. was not involved in signal piracy.

On August 27, 2004, counsel for Lucas Garza, Jr. sent an attorney proffer letter to counsel for Plaintiff Directv informing the Plaintiff that Lucas Garza, Jr. would testify that he assumed his son, Defendant Luke Garza, used his credit card to purchase the devices.

On October 19, 2004, Plaintiff Directv propounded its first sets of written discovery requests upon Lucas Garza, Jr.

On March 9, 2005, Defendant Garza executed an affidavit attesting to using his father's credit card to purchase smart card programming products from The Computer Shanty.

ORDER - 2

On March 24, 2005, Directv and Lucas Garza, Jr. stipulated to a dismissal with prejudice of that action.   The District Court ordered the dismissal with prejudice the same day.

Directv filed this action against Defendant Garza in the United States District Court for the Eastern District of Washington on April 1, 2005.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).   The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).   The moving party must identify the pleadings, depositions, affidavits, or other evidence which the moving party "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).   "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."   *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir.1982).   The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.   Thus, to successfully rebut a properly supported motion for summary judgment, the nonmoving party "must point to some facts in the record that demonstrate a genuine issue of material fact and, with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736

(9th Cir.2000) (citing Fed.R.Civ.P. 56; *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548).

### III.   STATUTE OF LIMITATIONS

Defendant Garza contends that he is entitled to summary judgment dismissing Plaintiff Directv's legal claims as being time-barred by the relevant statutes of limitations.  Directv asserts that all of its claims were timely filed within the applicable statutes of limitations. Memo in Opposition at 5.

A.  **Count V, 18 U.S.C. § 2511(1)(a)**

Defendant Garza seeks summary judgment dismissing Directv's claim under the Federal Wiretap Act ("Wiretap Act"), 18 U.S.C. § 2511(1)(a).   In Count V of its Complaint, Directv alleges that Defendant Garza violated the Wiretap Act by intentionally intercepting Directv satellite transmissions and/or endeavoring to intercept such transmissions. Complaint at 13, ¶ 53.  A civil action for damages under the Wiretap Act is created by 18 U.S.C. § 2520(a), which provides that "[a]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation..."   As a result of Defendant Garza's alleged violation, Directv asserts that it was deprived of subscription and pay-per-view revenues as well as suffering security compromises and trade secret infringement. Complaint at 14, ¶ 54.

1.  *The Applicable Time Period*

18 U.S.C. § 2520(e) expressly provides a two-year limitation period for claims brought under the Wiretap Act.  Moreover, the parties do not dispute the application of a two-year statute of

limitations to claims brought for violations of Section 2511. Memo
in Opposition at 5.

2. *Accrual Date*

A statute of limitations period normally commences when the
cause of action accrues or the injury occurs. *Volk, L.A. v. D.A.
Davidson & Co.*, 816 F.2d 1406, 1412 (9th Cir.1987). In accordance
with this general standard, the statute of limitations period for
Section 2520(e), by the plain language of the statute, begins to run
once the "claimant first has a reasonable opportunity to discover
the violation." 18 U.S.C. § 2520(e).  The claimant need not have
actual knowledge of the violation before the commencement of the
limitations period. *Davis v. Zirchenback*, 149 F.3d 614, 618 (7th
Cir.1998).  "There is no need that someone actually 'discover' or be
aware of the violation." *Sparshott v. Feld Entertainment, Inc.*, 311
F.3d 425, 430 (D.C.Cir.2003).  In fact, a plaintiff "need not even
know the perpetrators of an illicit wiretapping if knowledge of the
wiretapping itself would lead to discovery of the perpetrators."
*Andes v. Knox*, 905 F.2d 188, 189 (8th Cir.1990); *Directv, Inc. v.
Thomas*, 329 F.Supp.2d 949, 952 (E.D.Mich.2004) (holding that a
wiretap plaintiff need not know the identity of the specific
violator who caused the plaintiff's wiretap injury in order for the
cause of action to accrue).  Thus, whether the limitations period
has commenced depends upon whether the claimant has had "a
reasonable opportunity to discover the wiretapping." *Sparshott*, 311
F.3d at 430.

Defendant Garza asserts that Directv's § 2520(a) claim filed on
April 1, 2005 should be time-barred because Defendant contends that
the statute of limitations period began to run on December 1, 2001,

the date of the raids. Reply at 5. Defendant Garza argues that the raids provided Directv with a reasonable opportunity to discover the alleged violations, and thus should serve as the accrual date for the limitations period. *Id*. Defendant Garza argues that since Directv was in possession of records after the raids, Directv was "armed with notice that Defendant Garza may have had possible involvement with the purchase of the devices." Reply at 5. Defendant Garza asserts that since Directv was on notice of the alleged violations as of December 1, 2001, the fact that Directv did not know of the identity of the defendant until sometime later is irrelevant for purposes of the limitations period. Reply at 2. Defendant Garza contends that had Directv been diligent in its investigation against Lucas Garza, Jr. (Defendant Garza's father), Directv could have named or joined Defendant Garza in the lawsuit against his father. Reply at 3.    Nevertheless, because Directv "slept on whatever rights it may have had" after being put on notice from the December 1, 2001 raids, Defendant Garza contends that Directv is now time-barred from bringing a suit because the two-year period has passed. Reply at 7.

Conversely, Directv asserts that its § 2520(a) claim was timely filed because the statute of limitations did not begin to run on its claims until March 9, 2005, or alternatively April 13, 2003. Directv claims March 9, 2005 the proper accrual date because this was the "earliest opportunity for Directv to discover Luke Garza's violation." Memo in Opposition at 7.    On March 9, Defendant Garza "submitted an affidavit, in connection with the prior lawsuit against his father, stating that he had purchased the Pirate Access Devices." Memo in Opposition at 6.    Directv argues that it was not

until the filing of the affidavit that it discovered its cause of action against Defendant Garza. *Id*. Directv further asserts that while the March 9, 2005 is the proper accrual date, the court could also find April 13, 2003 to be the accrual date without time-barring Directv's claims. On this date, Directv learned that Lucas Garza, Jr. was the father of Defendant Garza and that Defendant's father was not involved in the illegal purchases. Memo in Opposition at 8. While providing insufficient notice, this date, according to Directv, could still be deemed the accrual date without time-barring their claim. Memo in Opposition at 7. In any event, Directv contends that it had no reason to know of Defendant Garza's violation on December 1, 2001 because Directv's belief that Lucas Garza, Jr. was engaged in satellite piracy does not provide Directv with a reasonable opportunity to discover its cause of action against the son, Defendant Garza. Memo in Opposition at 9. Thus, by deeming either March 9, 2005 or April 13, 2003 to be the proper accrual dates and not December 1, 2001, Directv contends that its claim filed on April 1, 2005 is within the two-year limitations period.

Directv's interpretation of what constitutes a "reasonable opportunity to discover the alleged violations" is contrary to Ninth Circuit law. A plaintiff need not have knowledge of the identity of the alleged wrongdoer at the commencement of the limitations period. *Dyniewicz v. United States*, 742 F.2d 484, 486 (9th Cir.1984); *accord Bristol-Myers Squibb Co. v. Superior Court*, 32 Cal.App.4th 959, 965, 38 Cal.Rptr.2d 298, 303 (Cal.Ct.App.1995) (ignorance of identity of alleged wrongdoer did not affect accrual of claim upon plaintiff's knowledge of injury and of facts creating, or which should have

created, a suspicion of negligence by another). The relevant discoveries that must be made prior to the accrual of a cause of action are the injury and the immediate result of that injury. *See Id.* Furthermore, Directv's position runs contrary to an important purpose of statutes of limitations:

> [T]he limiting period provides plaintiffs with a period in which to investigate a perceived injury and investigate potential claims. A plaintiff must take action on such claims, *including investigating the identity of potential defendants*, before the expiration of the statutory period.

*Strand v. General Electric Co.*, 945 F.Supp. 1334, 1340 (D.Hi.1996)(emphasis added).

Moreover, case law from other circuits addressing analogous claims under § 2520(a) have generally not considered knowledge of the identity of the violator to be a prerequisite to the commencement of the limitations period. *See Andes*, 905 F.2d at 189 ("the cause of action accrues when the claimant has a reasonable opportunity to discover the violation, not when [it] discovers the true identity of the violator or all of the violators"); *Sparshott*, 311 F.3d at 430 ("a plaintiff need not even know the perpetrators of [the illicit activity] if knowledge of [it] would lead to discovery of the perpetrators"); *Newcastle County v. Halliburton NUS Corp.*, 111 F.3d 1116, 1124 (3rd Cir. 1997) ("a claim accrues upon awareness of actual injury, not upon awareness that the injury constitutes a legal wrong).

In support of its contention that the limitations period does not begin to run until claimants discover the identity of the violators, Directv cites *Directv v. Thomas*, 329 F.Supp.2d 949 (E.D.Mich. 2004). However, Direct misreads the rule expounded in *Thomas*. In *Thomas*, Directv executed writs of seizure against a

shipping facility to obtain sales records, shipping records, and credit card receipts identifying numerous pirates of its programming. 329 F.Supp.2d at 951. The records Directv obtained in the seizure, however, did not include the documented purchases made by defendants Thomas and Suggs. *Id.* Directv only learned of the purchases made by Thomas and Suggs once the additional records were voluntarily disclosed several months after the initial raid. *Id.* Given the fact that Directv did not learn of this specific violation on the day of the raid, the *Thomas* court found the accrual date to be the day Directv received the records pertaining to Thomas and Suggs, not the day of the raid. In forming this conclusion, the court held that:

> While it is true that, for 2520(e) purposes, a wiretap plaintiff *need not know the identity of the specific violator* who caused the plaintiff's wiretap injury, it is also true that § 2520(e)'s two-year limitations period does not begin to run until the plaintiff has a *reasonable opportunity to discover 'the violation' that is the subject matter of the lawsuit*...general awareness that widespread satellite piracy was ongoing is not enough to give rise to a cause of action for a specific, individual violation of the Wiretap Act and thereby initiate the limitations period.

329 F.Supp.2d at 953-4 (citations omitted)(emphasis added). The *Thomas* court concluded that the records seized on the date of the initial raid did not provide Directv with notice, not because Directv lacked any information about the *violator*, but rather because it lacked any information about the *actual violation*. *Id.* Thus, neither *Thomas* nor any of the other aforementioned case law support Directv's contention that a claimant must discover the identity of the wrongdoer prior to the commencement of the limitations period.

That said, the plain language of the Wiretap Act explicitly

incorporates what is known as the "discovery rule" in the applicable federal statute of limitations. *Directv v. Rodkey*, 369 F.Supp.2d 587, 598 (W.D.Pa.2000)(citing 54 C.J.S. Limitations of Actions § 87 (1987))(quoted in *In re Cases Filed by Directv, Inc.*, 344 F.Supp.2d 647, 654 (D.Az.2004)).   Under the discovery rule, "the limitation period begins to run when the claimant discovers or in the exercise of reasonable diligence should have discovered the acts constituting the alleged violation." *Id*.   Thus, the discovery rule tolls the commencement of the limitations period "until the time that the plaintiff knows or reasonably should know" both: "(1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Id*. (quoting *DiCicco v. Willow Grove Bank*, 308 F.Supp.2d 528, 534 (E.D.Pa.2004)(quoting *Lang v. Cont'l Assur. Co.*, 54 Fed.Appx. 72, 74 (3rd Cir.2002)(citing *Cappelli v. York Operating Co., Inc.*, 711 A.2d 481, 484-85 (Pa.Super.1998).   Therefore, having deemed the discovery rule applicable, the proper accrual date for the statute of limitations is the date upon which Directv "knew or reasonably should have known that it had been injured, and that its injury had been caused by another party's conduct." *Id*.

Defendant Garza contends that Directv knew or should have known that it had been injured as of December 1, 2001 and that its injury had been caused by another party. Memo in Support at 14-15. The court agrees with Defendant that Directv had a reasonable opportunity to discover Defendant Garza's *purchases* of devices on December 1, 2001, the date on which Directv executed the writs of seizure against the Computer Shanty. Opposition p.6.   Nevertheless, the gravamen of a plaintiff's claim under 18 U.S.C. § 2511(1)(a) is a defendant's "alleged interception and use of plaintiff's satellite

programming, not defendant's purchase of unlawful devices." *Rodkey*, 369 F.Supp.2d at 600 (citing *In re Cases Filed by Directv, Inc.*, 344 F.Supp.2d at 655).

Given the plain language of 18 U.S.C. § 2520(e), the two-year limitations period begins to run when the plaintiff has a reasonable opportunity to discover "the violation," or the injury that forms the subject matter of the claim. *In re Cases Filed by Directv, Inc.*, 344 F.Supp.2d at 655 (citing 18 U.S.C. § 2520(e)). Therefore, while Directv need not have known of Defendant Garza's identity on the accrual date, it must have been provided with a reasonable opportunity to discover the subject matter of its claim. Under 18 U.S.C. § 2511(1)(a), the subject matter of plaintiff's claim is not defendant's purchases of devices, but rather defendant's "alleged unauthorized interception and use of Directv's satellite programming." *Id.* Thus, December 1, 2001, the date of execution of the writs of seizure, does not mark the start of the running of the statute of limitations. Notice of purchase does not provide Directv with a reasonable opportunity to discover the violation under 18 U.S.C. § 2511(1)(a), which is the actual interception of Directv's satellite programming. *See Rodkey*, 369 F.Supp.2d at 600.

"In determining when an action has accrued under a discovery-based statute of limitations, '[t]he question of when [the alleged wrongdoing] was or should have been discovered is a question of fact.'" *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1307 (9th Cir. 1992) *(quoting Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984), *cert. denied*, 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984). When or whether Plaintiff Directv had a reasonable opportunity to discover Defendant Garza's alleged

unauthorized interception and use of the satellite programming has not been developed in the record. Therefore, Defendant's motion for summary judgment regarding claims under 18 U.S.C. § 2511(1)(a) is denied.

B. **Counts I and II, 47 U.S.C. § 605(a) and 605(e)(4)**

Defendant Garza also seeks summary judgment dismissing Directv's claims under subsections 605(a) and 605(e)(4) of the Federal Communications Act ("FCA"). In Count I of its Complaint, Directv seeks relief pursuant to subsection 605(a), alleging that Defendant Garza violated said subsection by assisting in the "unauthorized reception and use of Directv's satellite transmissions of television programming by persons not authorized to receive such transmissions." Complaint at 9, ¶ 33. In Count II of its Complaint, Directv alleges that Defendant Garza violated subsection 605(e)(4) of the Federal Communications Act by:

> [M]anufacturing, assembling, modifying, importing, exporting, distributing, and/or selling illegal satellite signal theft devices without authorization, knowing or having reason to know that such devices are primarily of assistance in the unauthorized decryption of Directv's satellite transmission of television programming, or are intended by defendant to assist other persons in the unauthorized reception and use of Directv's satellite transmissions of television programming...

Complaint at 10, ¶ 38. Subsection 605(a) provides that "no person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." Subsection 605(e)(4) provides in relevant part:

> [A]ny person who manufacturers, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is

1   primarily of assistance in the unauthorized decryption of
2   satellite cable programming, or direct-to-home satellite
    services,  or  is  intended  for  any  other  activity
3   prohibited by subsection(a) of this section, shall be
    fined...

4   1.  *The Applicable Time Period*

5       The FCA does not set forth a specific statute of limitations

6   for interception of cable and wire communications. *Prostar v.*

7   *Massachi*, 239 F.3d 669, 671 (5th Cir.2001).  Nevertheless, where a

8   federal statutory provision fails to provide a limitations period,

9   the court generally borrows the limitations period from the most

10  closely analogous state statute, *North Star Steel Co. v. Thomas*, 515

11  U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995), or from an

12  analogous federal statute should such an adoption be deemed more

13  appropriate by the court. *DelCostello v. Teamsters*, 462 U.S. 151,

14  171-172 (1983); *Reed v. United Transp. Union*, 488 U.S. 319, 324

15  (1989); *Lampf, Pleva, Lipkind, Prupis & Petigrew v. Gilbertson*, 501

16  U.S. 350, 355 (1991).

17      There is no dispute between the parties over what limitations

18  period should be adopted for claims under subsections 605(a) and

19  605(e)(4).   Both parties agree that the two-year statute of

20  limitations contained in section 2520(e) of the Wiretap Act should

21  be adopted for the FCA. Memo in Support at 4; Memo in Opposition at

22  5.

23  2.  *Accrual Date*

24      The Ninth Circuit has ruled that the statute of limitations

25  period for Section 605 of the FCA begins to run once the "aggrieved

26  person discovers or, by the exercise of due diligence could have

27  discovered, the basis of the cause of action." *Pavlak v. Church*, 727

28  F.2d 1425, 1428 (9th Cir.1984).  Directv's claims in Counts I and II

ORDER - 13

are based upon Defendant Garza's unauthorized reception of satellite signals and Defendant Garza's knowing manufacture, assembly, modification, sale or distribution of devices used primarily in assisting the unauthorized decryption of Directv's satellite transmissions, respectively. Complaint at 9-11.  The fact that Directv was aware as of December 1, 2001 that these potentially offending devices had been *purchased* does not alone provide Directv with a reasonable opportunity to discover the basis of its causes of action under 47 U.S.C. § 605(a) and (e)(4). *See In re Cases Filed by Directv, Inc.*, 344 F.Supp.2d at 662.  Knowledge of the mere *possession* of the devices did not constitute notice of violations under sections 605(a) and 605(e)(4).

The issue of when Directv discovered, or by the exercise of due diligence could have discovered, the basis of its cause of action under 47 U.S.C. § 605(a) and (e)(4) presents questions of fact which at this time cannot be determined by the Court on Defendant's motion for summary judgment.  Therefore, Defendant's motion for summary judgment for claims under 47 U.S.C. § 605(a) and (e)(4) are denied.

C.  **Counts III and IV, 17 U.S.C. § 1201(a)(2) and 1201(b)(1)**

Defendant Garza also seeks summary judgment dismissing Directv's claims under subsections 1201(a)(2) and (b)(1) of the Digital Millennium Act ("DMA").  In Counts III and IV of its Complaint, Directv seeks relief pursuant to subsections 1201(a)(2) and (b)(1), alleging that Defendant Garza violated said subsections by engaging in the business of "manufacturing, importing, exporting, offering to the public, providing and/or trafficking in illegal satellite signal theft devices." Complaint at 11, ¶ 43.

1. *The Applicable Time Period*

17 U.S.C. § 507(b) expressly provides a three-year limitation period for civil actions brought under the DMA. 17 U.S.C. § 507(b); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 480 (9th Cir.1994). Moreover, the parties do not dispute the application of a three-year statute of limitations to claims brought for violations of Sections 1201(a)(2) or 1201(b)(1). Memo in Opposition at 5.

2. *Accrual Date*

The Ninth Circuit has ruled that "a cause of action [under the DMA] accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley*, 19 F.3d at 481; *accord Polar Bear Prods. v. Timex Corp.*, 384 F.3d 700, 707 n.4 (9th Cir.2004). Directv's claims in Counts III and IV are based on Defendant Garza's engagement in the purposeful circumvention of Directv's encryption and technological measures conditioning access. Complaint at 11-13. Therefore, since the gravamen of Plaintiff's causes of action under 17 U.S.C. 1201(a)(2) and (b)(2) is not *mere possession* of the devices, the knowledge that Directv gained from the writs of seizure against the Computer Shanty on December 1, 2001 does not constitute notice of a DMA violation. Accordingly, precisely when Directv had or should have had knowledge of a violation under 17 U.S.C. § 1201(a)(1) and (b)(2) presents a question of fact which at this time cannot be determined by the Court on Defendant's motion for summary judgment. Therefore, Defendant's motion for summary judgment for claims under DMA are denied.

D. **Counts VI, VII, VIII, and IX**

Defendant Garza also seeks summary judgment dismissing Directv's common law claims of unjust enrichment, tortious interference with contractual relations, tortious interference with

prospective contractual relations, and unfair competition.

In Count VI, Directv alleges that Defendant Garza has been unjustly enriched by usurping "trade secrets, proprietary information, revenues, and other property rights belonging to Directv for the purpose of enhancing the commercial value of defendant's goods." Complaint at 14. Washington courts have defined unjust enrichment as:

> [A] general principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained or appropriated, where it is just and equitable that such restitution be me, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.

*Tulalip Shores, Inc. v. Mortland*, 9 Wash.App. 271, 274-75, 511 P.2d 1402, 1404 (1973)(citing 66 Am.Jur.2d Restitution and Implied Contracts § 3 (1973)); *accord Lloyd et al. v. Ridgefield Lumber Ass'n Inc., et al.* , 38 Wash.2d 723, 735-36, 231 P.2d 613, 620 (1951); *Hardgrove v. Bowman*, 10 Wash.2d 136, 137-38, 116 P.2d 336, 337 (1941).

In Count VII, Directv alleges that Defendant tortiously interfered with Directv's contractual relations by "inducing, procuring, conspiring, aiding and abetting an as yet undetermined number of subscribers not to perform their respective contracts with Directv, thereby causing the breach or termination thereof, and resulting in damage to Directv." Complaint at 15. In Count VIII, Directv alleges that Defendant tortiously interfered with prospective contractual relations by "providing illegal satellite signal theft devices to an as yet undetermined number of subscribers and prospective subscribers, thereby hindering Directv from acquiring each such prospective relation and resulting in damage to

ORDER - 16

Directv." Complaint at 16.  In order for an action to constitute tortious interference with contractual relations or business expectancy in Washington courts, five essential elements must be present:

> 1.  The existence of a valid contractual relationship or business expectancy;
> 2.  That defendants had knowledge of that relationship;
> 3.  An intentional interference inducing or causing a breach or termination of the relationship or expectancy;
> 4.  That defendants interfered for an improper purpose or used improper means; and
> 5.  Resultant damages.

*Commodore v. University Mechanical Contractors, Inc.*, 120 Wash.2d 120, 137, 839 P.2d 314, 323 (1992)(citing *Sintra, Inc. v. Seattle*, 119 Wash.2d 1, 28, 829 P.2d 765 (1992)).

In Count IX, Directv seeks under statutory and common law a preliminary and permanent injunction restraining and enjoining Defendant Garza "from engaging in acts of unfair competition in connection with the sale of illegal satellite signal devices," as well as "an accounting of defendant's profits for all goods sold through defendant's acts of unfair competition..." Complaint at 17. Unfair competition amongst competitors is prohibited in Washington state under the Consumer Protection Act, which states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful. RCW 19.86.020.  This provision of the Washington Consumer Protection Act "applies only to acts against competitors." *State v. Black*, 100 Wash.2d 793, 803, 676 P.2d 963 (1984); *Seaboard Surety Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.*, 81 Wash.2d 740, 742-43, 504 P.2d 1139 (1973).  Prior to the implementation of RCW 19.86.020, a "common law action for unfair competition was available to one

whose names, symbols, or devices had been appropriated and used by a competitor..." *Seaboard Surety Co.*, 81 Wash.2d at 743 (citing *Whole Grain Wheat Dist. Co. v. Bon Marche*, 154 Wash. 455, 282 P. 914 (1929)); *accord Olympia Brewing Co. v. Northwest Brewing Co. et al.*, 178 Wash. 533, 538, 35 P.2d 104, 107 (1934)(test to determine unfair competition rests upon whether defendant, as a matter of fact, is by his conduct passing off his goods as plaintiff's goods, or his business as plaintiff's business). Nevertheless, RCW 19.86.020 has been interpreted by Washington courts to "embrace a much larger category of acts" and "benefit a much larger group of competitors" than the common law action. *Seaboard Surety Co.*, 81 Wash.2d at 743.

1. *The Applicable Time Period*

The parties do not dispute the application of the three-year statute of limitations period for state law claims set forth in RCW 4.16.080.[1] Memo in Opposition at 13.

2. *Accrual Date*

The parties do not dispute applying the discovery rule to

---

[1] See *Seattle Professional Engineering Employees Assoc. v. The Boeing Co.*, 139 Wn.2d 824, 838, 991 P.2d 1126, 1133 (2000)(holding claims for unjust enrichment are subject to the three-year statute of limitations provided by RCW 4.16.080(3)); *City of Seattle v. Blume*, 134 Wash.2d 243, 251, 947 P.2d 223, 227 (1997)(holding that "the limitations period for a cause of action for tortious interference [with a business expectancy] is three years, as specified in RCW 4.16.080(2)"; *But see Most Worshipful Prince Hall Grand Lodge of Washington, F. & A.M., et al. v. Most Worshipful Universal Grand Lodge, A.F. & A.M. of Washington, et. al*, 62 Wash.2d 28, 41, 381 P.2d 130, 139 (1963)(holding RCW 4.16.080 inapplicable to suits alleging unfair competition); *Lightfoot v. MacDonald*, 86 Wash.2d 331, 332, 544 P.2d 88, 89 (1976)(holding claims of unfair competition brought under the Consumer Protection Act to be subject to a 4-year statute of limitations set forth in RCW 19.86.120).

determine the proper accrual date for the state law claims.[2] Memo in Opposition at 13.  Under the discovery rule, the limitations period begins to run "when the plaintiff knew or should have known the essential elements of the cause of action." *Gevaart v. Metco Constr., Inc.*, 111 Wash.2d 499, 501, 760 P.2d 348 (1988); *White v. Johns-Manville Corp.*, 103 Wash.2d 344, 348, 693 P.2d 687,(1985).  In discovering the basis for the cause of action, "the discovery rule requires a plaintiff to use due diligence." *Allen*, 118 Wash.2d at 758, 826 P.2d 200 (citing *Reichelt v. Johns-Manville Corp.*, 107 Wash.2d 761, 772, 733 P.2d 530 (1987); *White*, 103 Wash.2d at 353-54, 693 P.2d 687; *Gevaart*, 111 Wash.2d at 502, 760 P.2d 348. Nevertheless, the discovery rule postpones the accrual date "until the time when a plaintiff, through the exercise of due diligence, should have discovered the basis for a cause of action." *Id*. at 758, 826 P.2d 200.

Whether or not the plaintiff exercised due diligence in discovering its cause of action is normally a question of fact. *Mayer v. Huesner*, 126 Wash.App. 114, 123, 107 P.3d 152, 157 (2005)(citing *Allen*, 118 Wash.2d at 760, 826 P.2d 200).  It is true that questions of fact may be decided on summary judgment "if reasonable minds can reach but one conclusion on them." *Allen*, 118 Wash.2d at 760, 826 P.2d 200.  In the case-at-hand, reasonable minds could differ on whether Directv discovered or should have discovered the basis for its state law claims after merely discovering on December 1, 2001 that the illegal devices had been purchased. Accordingly, Defendant's motion for summary judgment on the state

---

[2] Because neither party disputes the applicability of the discovery rule, the Court assumes its applicability. *Allen v. State*, 118 Wash.2d 753, 758, 826 P.2d 200, 203 (1992).

ORDER - 19

law claims in Counts VI, VII, VIII, and IX are denied.

E.  **Count X, RCW 9A.56.230**

Finally, Defendant Garza seeks summary judgment dismissing Directv's claim under RCW 9A.56.230.  In Count X of its Complaint, Directv seeks relief pursuant to RCW 9A.56.230 for Defendant Garza's alleged "[u]nlawful sale of subscription television services," in violation of RCW 9A.56.230(1)(c). Complaint at 17.  A person is guilty of violating said subsection if her or she:

> Manufactures, imports into the state of Washington, distributes, sells, leases, or offers for sale or lease a device, plan or kit for a device designed in whole or in part to receive subscription television services offered for sale by the subscription television service company, regardless of whether the programming or services are encoded, filtered, scrambled, or otherwise made unintelligible.

RCW 9A.56.230(1)(c).

1.  *The Applicable Time Period*

The parties do not dispute the application of a three-year statute of limitations period for the state law claims. Memo in Opposition at 13.

2.  *Accrual Date*

For the reasons stated above regarding Counts VI, VII, VIII, and IX, whether Directv discovered, or with due diligence should have discovered, its cause of action under RCW 9A.56.230 after merely learning of purchase and possession is a question of fact on which reasonable minds could differ.  Accordingly, Defendant's motion for summary judgment on the statutory state law claim in Count X is denied.

### IV.  DOCTRINE OF LACHES

Defendant Garza contends that he is entitled to summary judgment dismissing Directv's equitable claims as being time-barred

by the doctrine of laches.  Directv asserts that Defendant Garza's motion should be denied because Defendant Garza can show neither unreasonable delay in filing the suit nor resulting prejudice. Memo in Opposition at 14.

1. *Federal Claims*

The doctrine of laches provides an equitable time limitation on a claimant's right to file suit. *Boone v. Mechanical Specialties Co.*, 609 F.2d 956 (9th Cir. 1979).  The defense of laches "requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658 (9th Cir.1980)(citing *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961); *Cady v. Morton*, 527 F.2d 786, 792 (9th Cir. 1975); *Lathan v. Brinegar*, 506 F.2d 677, 691-92 (9th Cir. 1974)(en banc).

In determining the first element, a plaintiff's delay in filing suit is generally deemed reasonable so long as the analogous statute of limitations has not expired. *Gillons v. Shell Co. Of California*, 86 F.2d 600, 604 (9th Cir. 1936).  Furthermore, "only rarely should laches bar a case before the analogous statute has run." *Thomas*, 329 F.Supp.2d at 954 (quoting *Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 466 (6th Cir. 2004)).

Because determining lack of diligence and prejudice depends on a close evaluation of all the particular facts, a question of whether the doctrine of laches is applicable to a certain case is seldom resolved in summary judgment. *Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1083 (9th Cir. 2000)(citing *Bratton*, 649 F.2d at 666-67).  For instance, if a genuine issue of material fact

exists regarding when a claimant knew or had reason to know of an actual or impending violation, a grant of summary judgment would be improper because the first element of the laches test could not be established. *Kling v. Hallmark Cards, Inc.*, 225 F.3d 1030, 1042 (9th Cir. 2000).   In order to meet the first prong of the doctrine of laches for summary judgment, the record must "support the conclusion that, as a matter of law, a reasonably diligent plaintiff would have discovered the violation." *Id*.  Thus, if an issue of fact exists as to when or whether the claimant discovered its cause of action, diligence cannot be decided as a matter of law.

As discussed previously, whether Directv had or should have had knowledge of its causes of action after learning of Defendant Garza's purchase presents a question of fact.   Therefore, since the Court cannot determine when Directv had notice of its causes of action, it also cannot determine whether Directv was diligent in asserting its claims after such notice.   Reasonable minds, at this time, could reach more than one conclusion on the issue of diligence. *See Allen*, 118 Wash.2d at 760, 826 P.2d 200.   Thus, it would be inappropriate, based on the current state of the record, for the Court to draw a conclusion as a matter of law.

Because the Court concludes that Defendant Garza has not established unreasonable delay as a matter of law, it need not decide at this time whether Garza has established sufficient prejudice to warrant summary judgment. *See Kling*, 225 F.3d at 1042. Accordingly, Defendant's motion for summary judgment on the federal law claims based on the doctrine of laches is denied.

2.  *State Claims*

Under Washington law, laches is held to be "an extraordinary

remedy to prevent injustice and hardship and should not be employed as 'a mere artificial excuse for denying to a litigant that which...he is fairly entitled to receive...'" *Brost v. L.A.N.D., Inc.*, 37 Wash.App. 372, 376, 680 P.2d 453 (1984)(quoting *Crodle v. Dodge*, 99 Wash. 121, 131, 168 P. 986 (1917)). Washington common law defines the doctrine of laches as "an implied waiver arising from knowledge of existing conditions and acquiescence in them." *Lopp v. Peninsula Sch. Dist. No. 401*, 90 Wash.2d 754, 759, 585 P.2d 801 (1978). In order to establish a laches defense, a litigant must prove:

> [F]irst, knowledge or reasonable opportunity to discover on the part of a potential plaintiff that he has a cause of action against a defendant; second, an unreasonable delay by the plaintiff in commencing that cause of action; and third, damage to the defendant resulting from the unreasonable delay.

*Lopp*, 90 Wash.2d at 759, 585 P.2d 801. Each of the factors must be proven, as "none of these elements alone raises the defense of laches." *Id*.

As previously concluded on the defense of laches under federal law, whether Directv had "knowledge or reasonable opportunity to discover" its causes of action against Defendant Garza after learning of the purchases on December 1, 2001 presents a question of fact which at this time cannot be determined by the Court on a motion for summary judgment. Accordingly, because the Court cannot determine as a matter of law the first element of the laches test under Washington law, Defendant Garza's motion for summary judgment on the state law claims based on the doctrine of laches is denied.

### V.  CONCLUSION

For the aforementioned reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Ct. Rec. 7) is **DENIED**.

ORDER - 23

1        **IT IS SO ORDERED.**

2        The District Court Executive is directed to file this Order and

3   provide copies to counsel.

4        **DATED** this 16th day of September, 2005.

5
                              *s/Lonny R. Suko*
6                    _____
                              LONNY R. SUKO
7                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER - 24